**In the United States District Court
for the District of Kansas**

———————

Case No. 23-cv-01066-TC

———————

TAMMY CRANMER,

*Plaintiff*

v.

CORDELL & CORDELL, P.C.,

*Defendant*

———————

**MEMORANDUM AND ORDER**

 Tammy Cranmer sues her former employer, Cordell & Cordell, asserting three distinct discrimination and retaliation claims. Doc. 97. Cordell & Cordell requests summary judgment on all three claims. Doc. 99. Cranmer seeks sanctions under Fed. R. Civ. P. 37. Doc. 131. For the following reasons, Cordell & Cordell's motion for summary judgment is granted in part and denied in part and Cranmer's sanctions motion is denied as moot.

**I**

**A**

 There are two motions at issue. Each has its own governing standard.

 **1.** Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim's resolution. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims

1

are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(d). To determine whether a genuine issue of fact exists, a court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okl.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the non-moving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record, *see Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hicks v. City of Watonga, Okl.*, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to dispositive matters. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

**2.** Rule 37 bars a party from using information it failed to disclose as required by Fed. R. Civ. P. 26(a) "unless the failure was substantially justified or is harmless." *See Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1226 (10th Cir. 2015) (discussing a court's Rule 37(c) authority). Four factors guide a court examining whether failure to disclose was "substantially justified or is harmless:" the degree of prejudice or surprise to the opposing party, the ability to cure the prejudice, the extent to which allowing the late disclosure would disrupt trial, and the offending party's "bad faith or willfulness." *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017); *see also Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). D. Kan. R. 37.2 requires parties to meet and confer "in good faith" before filing a Rule 37 motion.

**B**

Cordell & Cordell formerly employed Cranmer as a paralegal in the law firm's Wichita, Kansas office. Doc. 109 at ¶ 2.[1] The Cordell & Cordell office in Wichita employs Lexicon Services LLC to provide human resources. *Id.* at ¶ 2.

The parties broadly agree on the timeline of relevant events. Cranmer began working as a paralegal in June 2018. Doc. 109 at ¶ 1; Doc. 97 at ¶ 2.a.i. Chris Randle joined the firm as an attorney roughly a year after Cranmer. Doc. 109 at ¶ 7. Cranmer says that Randle subjected her to sexual harassment and threats and that she saw him sexually harass other employees and clients. Doc. 121 at ¶ 7. Cranmer reported Randle's behavior to an associate attorney in November 2021. Doc. 121 at ¶ 9. After an internal investigation, Randle was terminated sometime in November or December 2021. Doc. 121 at ¶ 16.

Cranmer believes she began to be treated unfairly after reporting Randle. On March 1, 2022, Cranmer's attorney sent a letter to Cordell & Cordell alleging that Kim Gray, the attorney in charge of the Wichita office at that time and Cranmer's supervisor, had retaliated against Cranmer for reporting Randle. Doc. 109 at ¶ 30. Specifically, the letter asserted that Gray retaliated against Cranmer by providing an unjustifiably poor evaluation in February 2022, not sending a cease-and-desist letter to Randle, and speaking to Cranmer in a derogatory manner. *Id.* Gray was made aware of the letter. *See* Doc. 128 at 6. Then, at an Annual Review held March 31, 2022, the firm indicated that Cranmer's performance was "Below Expectations," and that she had "not consistently met job description roles and responsibilities." Doc. 109 at ¶ 38. Roughly six weeks later, in May 2022, Cordell & Cordell held a "mediation" between Cranmer and Gray to discuss workplace expectations, with Greg Crook, Lexicon's Vice President of Human Resources, serving as mediator. Doc. 109 at ¶¶ 49, 53; Doc. 97 at ¶ 2.a.iii. Cranmer claims that this internal mediation set her up to fail. Doc. 121 at ¶ 58. Cordell & Cordell claims the mediation put Cranmer on further notice that she needed to improve her performance. Doc. 128 at 14.

Several days later, on May 26, 2022, Cranmer emailed Gray that she needed paid leave for medical appointments associated with kidney "malfunction/failure." Doc. 97 at ¶ 2.a.v. This was the first time

---

[1] All document citations are to the document and page number assigned in the CM/ECF system. All facts are undisputed unless otherwise stated.

3

anyone at Cordell & Cordell learned of Cranmer's kidney malfunction. Doc. 109 at ¶ 60. Gray approved all of Cranmer's leave requests for kidney treatment. Doc. 109 at ¶ 63. She did not tell anyone else in the firm about Cranmer's kidney "malfunction/failure." Doc. 121 at ¶ 54.

Around July 8, 2022, a final decision was made to terminate Cranmer. Doc. 109 at ¶ 76. Jon Lay, a Lexicon employee, terminated Cranmer in person on July 25, 2022 for "failure to adhere to expectations laid out in [the May 2022] mediation." *Id.* at ¶ 87. Allison Cunningham, Kim Gray's supervisor and an Executive Partner, participated in the termination by phone. Doc. 97 at ¶ 2.a.vii. The parties dispute who was ultimately responsible for the termination decision. Doc. 109 at ¶ 76 ("Cunningham made the decision"); Doc. 121 at ¶ 76 (Cunningham "approved the decision Gray had made").

Cordell & Cordell insists that Cranmer was terminated for performance reasons. Cranmer allegedly struggled with a new time clock system implemented in 2022. Doc. 109 at ¶ 33. As a result, on March 17, 2022, Gray emailed Cranmer that she had received five "missed punch requests." *Id.* at ¶ 26. Several days later, Gray forwarded an email to Cunningham documenting Cranmer's failure to clock in and out appropriately and informing Cunningham that others in the Wichita office complained that Cranmer took long lunches and often left early. Doc. 109 at ¶ 37.

Cranmer's alleged performance issues go beyond clocking in and out. In February 2022, Cranmer failed to return a client's tax documents the same day they were submitted for scanning, in violation of Cordell & Cordell policy. Doc. 109 at ¶ 26. Additionally, Gray wrote in the March 2022 review forms that Cranmer needed to improve in "responding to calls and emails," "being in the office during work hours," and "quality of work product." Doc. 109 at ¶ 41. Gray also added that Cranmer had given legal advice to a client, going beyond the limits of her role. Doc. 109 at ¶ 43. And on July 18, 2022, Cranmer was confronted about allegedly allowing a former client into the Cordell & Cordell offices, which was against Cordell & Cordell policy. Doc. 109 at ¶¶ 81–84.

Cranmer argues it was the combination of her reporting sexual harassment, the March 1 letter alleging retaliation, and her kidney condition that caused Cordell & Cordell to fire her. To support this contention, she points to specific facts involving Gray. For instance, Gray and Randle maintained friendly correspondence after Randle's termination. Doc. 121 at ¶ 20. And Cranmer implies that Gray's compensation went

4

down when Randle was terminated because he was a top biller, and Gray is compensated based on the firm's total revenue. Doc. 121 at ¶¶ 17, 21. Furthermore, Cranmer notes that Gray initiated conversations to have the firm terminate Cranmer. As early as January 12, 2022, Gray emailed an employee at Lexicon inquiring about termination. Doc. 109 at ¶ 24. The employee noted there was insufficient documentation to terminate Cranmer and recommended against it. *Id.*

Cranmer has raised three claims. First, she claims that Cordell & Cordell terminated her for reporting sexual harassment and protesting negative treatment in violation of Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a). Doc. 97 at 2. Second, she claims that it violated the Americans with Disabilities Act, 42 U.S.C. § 12112(a), by terminating her due to her kidney failure. *Id.* Third, she claims that her termination was retaliation for seeking an accommodation for a disability in violation of the ADA, 42 U.S.C. § 12203(a). *Id.* Cordell & Cordell requests summary judgment on all three claims. Doc. 99.

## II

Disputed issues of fact preclude summary judgment on Cranmer's Title VII claim and her ADA discrimination claim under Section 12112(a). But Cranmer has not demonstrated a prima facie case for retaliation under the ADA. Accordingly, Cordell & Cordell's motion for summary judgment, Doc. 99, is granted in part and denied in part. Cranmer's sanctions motion, Doc. 131, is denied as moot, and without prejudice.

### A

Cranmer claims that Cordell & Cordell terminated her in retaliation for reporting Randle and authorizing the March 1 letter protesting alleged mistreatment in violation of Title VII, Section 2000e-3(a). Doc. 97 at ¶ 4.a.i. Cordell & Cordell argue that it is entitled to summary judgment because Cranmer can show neither the causation element of her prima facie case nor that performance concerns were pretextual. It is wrong on both counts.

#### 1

A plaintiff alleging a violation of Section 2000e-3(a) who lacks direct evidence of retaliation must first state a prima facie case under the *McDonnell Douglas* burden-shifting framework. *Ford v. Jackson Nat'l Life*

*Ins. Co.*, 45 F.4th 1202, 1224 (10th Cir. 2022).[2] The prima facie case requires protected opposition to prohibited discrimination, that a reasonable employee in the plaintiff's position would have found the challenged action "materially adverse," and that the protected opposition caused the materially adverse action. *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021). If a plaintiff establishes a prima facie case, the employer must produce a "legitimate nondiscriminatory reason" for the materially adverse action. *Ford*, 45 F.4th at 1215. If an employer does so, the plaintiff must then show that the employer's "reasons are pretextual" to survive summary judgment. *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006). A plaintiff shows pretext by providing evidence from which "a reasonable factfinder could rationally find [the proffered nondiscriminatory reasons] unworthy of credence." *Wright v. Portercare Adventist Health Sys.*, 52 F.4th 1243, 1254 (10th Cir. 2022). Causation requires proof that the desire to retaliate "was the but-for cause" of the materially adverse action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). That means that a plaintiff must also show that an employer knew of the protected conduct before taking the materially adverse action. *Lindsay v. Denver Pub. Sch.*, 88 F.4th 1323, 1327–28 (10th Cir. 2023) ("[B]are speculation" is not enough to establish knowledge by the relevant decisionmakers).

## 2

Cranmer has made out a case that Cordell & Cordell knew of her protected conduct and that her protected conduct was a "but-for cause" of her termination. The firm knew of Cranmer's protected conduct when she reported Randle for harassing behavior in November 2021. Doc. 121 at ¶ 9. Approximately two months later, Gray memorialized her intent to seek Cranmer's termination. Doc. 109 at ¶ 24. In general, when the adverse action occurs less than three months from the protected activity, prima facie causation may be shown by timing alone. *See Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013) (citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)) (holding that a gap greater than three months is not independently sufficient but that the Tenth Circuit does not have "a precise temporal line"); *see also McDonald v. City of Wichita, Kansas*, 156 F. Supp. 3d 1279, 1302 (D. Kan. 2016) (finding that a gap of approximately two and a

---

[2] The parties agree that the burden-shifting framework is appropriate here. Doc. 121 at 23; Doc. 109 at 19. And Cordell & Cordell concedes that Cranmer engaged in protected activity and suffered materially adverse action. *See* Doc. 109 at 20.

half months establishes a causal link "[o]n its own"). But, according to Cranmer, Gray also had motivations tied to Randle: The two apparently remained on friendly terms after Randle was terminated and Gray's pay was negatively impacted by Randle's departure. *See* Doc. 121 at ¶ 17, 20, 21. In short, Cranmer's causation evidence rises above "mere speculation, conjecture, or surmise." *See Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007).

Cordell & Cordell argue that Cranmer's timing evidence is insufficient because there was an eight-month gap between when Cranmer reported Randle in November and her termination the following July. Doc. 109 at 21. That misconstrues the inquiry. The relevant time gap in this case is the gap between the first protected activity—reporting Randle—and a supervisor's stated desire to begin the termination process—Gray's January email. *See McDonald v. City of Wichita, Kansas*, 156 F. Supp. 3d at 1302 (analyzing whether such a time gap is sufficient). And the two-month gap is sufficient to withstand Cordell & Cordell's motion for summary judgment.

### 3

Cordell & Cordell separately argues that Cranmer cannot show that performance concerns were pretextual. Cordell & Cordell is again incorrect. A reasonable factfinder could find the supposition that Cranmer was terminated for poor performance "unworthy of credence" for at least two reasons.

First, nobody at Cordell & Cordell has come forward as the decisionmaker behind Cranmer's termination. Jon Lay testified, "I just want to make it abundantly clear I am not a decision maker here." Doc. 121-8 at 13. Greg Crook testified that "HR is an adviser, not a decision maker." Doc. 121-6 at 7. Kim Gray testified that "Allison [Cunningham] makes the final decision on who to terminate." Doc. 121-9 at 29. Allison Cunningham testified that "it," referring to a decision to terminate Cranmer, "would have been put in front of me as this is what we're going to do, this is what we need to do, and I would have said okay," implying she only rubberstamped the decision. Doc. 121-2 at 13. And when asked who would have asked for her "stamp of approval" Cunningham answered, "Kim and/or anyone from HR." *Id.* The absence of an identified decisionmaker permits an inference that the true decisionmaker is attempting to obscure retaliatory motives and avoid responsibility for them. *See Christensen v. Titan Distribution, Inc.*, 481 F.3d 1085, 1095 (8th Cir. 2007) (holding that the fact that "none of the [Defendants'] decision-makers who testified at trial were willing

to accept responsibility for making the decision not to hire [the Plaintiff]" could lead a jury to find pretext).

Second, the totality of the evidence, when viewed in the light most favorable to Cranmer, supports her position that the explanation provided is pretextual. In particular, a jury could conclude that Gray orchestrated Cranmer's termination as retribution for a financial penalty Randle's termination imposed on her. According to Cranmer, Jon Lay "suspiciously misjudged" her after talking with Gray but prior to meeting her in person whereafter his opinion changed. Doc. 121 at 34. Cranmer argues that indicates that Gray was acting behind the scenes, inaccurately telling Cordell & Cordell employees and contractors that Cranmer was a poor employee with an unpleasant disposition. *Id.* at 34 (citing *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151 (1st Cir. 1998)). Cranmer also says that Crook told her to "call off her attorney," providing further circumstantial evidence that Cordell & Cordell was bothered by Cranmer's claims and may have terminated her because Cranmer engaged in protected activity, particularly the March 1 letter. Doc. 121 at 35.

Internal Cordell & Cordell metrics also seem to support Cranmer's view of the situation. For instance, it is uncontroverted that the "Q2 Paralegal Dashboards" indicated that Cranmer's early 2022 percentage scores (of 97.06% and 96%) were in line with other paralegals' scores, casting doubt on the veracity of performance concerns. *See* Doc. 122-15 at 3.

To be sure, the evidence is not entirely one-sided. For example, Gray's testimony is that she was paid an annual salary, and was bonused based on how well the firm did overall, rather than how well the Wichita office did specifically. Doc. 109-6 at 24. That implies that Randle's termination affected her pay only marginally, if at all. *Id.* Likewise, Crook denies ever telling Cranmer to call off her attorney. Doc. 121-6 at 20. Moreover, Cranmer's 2021 scores are not as uniformly in line with her colleagues as her 2022 scores. *See* Doc. 109-15. Weighing such competing evidence and parsing the credibility of testimony is a quintessential jury task. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). As a result, such disputes preclude, rather than support, summary judgment.

## B

Cranmer has met her burden to show the prima facie case for ADA discrimination and raised facts showing that a jury could infer that her

termination was pretextual. But, contrary to her assertions, requesting and receiving paid time off Cranmer was already entitled to was not ADA-protected activity, dooming her ADA claim for retaliation under Section 12203(a).

### 1

The ADA makes employment discrimination against "a qualified individual on the basis of disability" illegal. 42 U.S.C. § 12112(a). As with a Title VII retaliation claim, in the "absence of direct evidence," courts evaluate an ADA discrimination claim using the *McDonnell Douglas* burden-shifting framework. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018). The prima facie case for discrimination requires a plaintiff to show that she is disabled under the statute, qualified for the job, and that the discriminatory conduct was because of her disability. *Id.* (citing *Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1218–19 (10th Cir. 2016)).

Cranmer has carried her burden to show, for purposes of summary judgment, that she is disabled under the statute. An individual is disabled when "a physical or mental impairment" "substantially limits one or more major life activities," when there is "a record of such an impairment," or where the plaintiff is "regarded as having such an impairment." 42 U.S.C. § 12102(1). That definition is to "be construed in favor of broad coverage of individuals … to the maximum extent permitted by [its] terms." *Id.* at § 12102(4). Whether a plaintiff has an "impairment" affecting "a major life activity" is a question of law, but whether it "substantially limits" a major life activity is a fact question for a jury. *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1143 (10th Cir. 2011); *see also Equal Emp. Opportunity Comm'n v. UPS Ground Freight, Inc.*, 443 F. Supp. 3d 1270, 1283 (D. Kan. 2020).

Cranmer contends that her kidney "malfunction/failure" qualifies as a "physical" impairment that limits one or more major life activities, particularly the operation of her kidneys. Doc. 121 at 37. That is sufficient to carry her burden at this stage. It is undisputed that Cranmer has some sort of kidney malfunction, *see* Doc. 109 at 25, and that qualifies as a physical impairment, *see* 29 C.F.R. § 1630.2(h). Moreover, "major life activities" include "the operation of an individual organ within a body system," meaning kidney malfunction affects a major life activity per the applicable regulations. *See id.* at § 1630.2(i)(ii); *see also Kastrati v. Progress of Peoples Mgmt. Corp.*, No. 18CV6731, 2020 WL 6940991 (E.D.N.Y. Nov. 24, 2020) (permitting an ADA discrimination

claim based in part on "kidney malfunction" to proceed beyond the motion to dismiss stage).

Cranmer has also established that she was qualified for her position for purposes of her prima facie case. A person is qualified when they can "perform the essential functions of the employment position" with or without a "reasonable accommodation." 42 U.S.C. § 12111(8); *see also Aubrey v. Koppes*, 975 F.3d 995, 1006 (10th Cir. 2020). Cordell & Cordell does not seriously dispute that Cranmer was otherwise qualified for her position—a position that she had performed to a reasonable degree of satisfaction for several years. And its argument that she was not qualified because a disability benefits determination finding her unable to work was made after she was terminated is not persuasive. *Contra* Doc. 109 at 26. Applying for Social Security benefits and being found disabled does not preclude a finding that a plaintiff remains qualified to perform certain work for the purposes of the ADA. *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 797 (1999) (holding that "pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim").

And finally, there is evidence, viewing the facts in the light most favorable to Cranmer, which would lead a reasonable jury to find she was terminated because of her kidney condition. The only person at Cordell & Cordell who knew about Cranmer's kidney condition was Gray. *See* Doc. 121 at ¶ 54; Doc. 109 at ¶ 60. Assuming, as a jury might, that Gray was the decisionmaker, Cranmer's causation case is supported by inferences from timing. Cranmer put Gray on notice of her kidney condition May 26 and approximately a month later on July 8 a final decision was made to fire her. She was ultimately terminated July 25. Such timing is sufficient to satisfy the prima facie causation burden. *See Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013) (citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).

Moreover, for substantially the same reasons as those outlined above regarding her Title VII claim, *supra* II.A.3., a jury could infer that performance concerns and "failure" to adhere to the expectations laid out in the May mediation are pretextual cover for prohibited discrimination. In particular, the lack of an identified decisionmaker, the fact that Cranmer's 2022 scores were in line with her colleagues, and Gray's plausible retributory motivations could lead a jury to determine that the supposition Cranmer was terminated for performance concerns is "unworthy of credence." *Cf. Aubrey v. Koppes*, 975 F.3d at 1015 (finding inaccuracies and the manner of termination could show that the

asserted legitimate reasons were pretext for ADA-prohibited discrimination).

**2**

The ADA also prohibits employers from discriminating against any individual for "opposing any act or practice" the ADA makes unlawful. 42 U.S.C. § 12203(a). ADA retaliation claims are analyzed under the *McDonnell Douglas* framework in the absence of direct evidence of retaliation. *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 679 (10th Cir. 2021). To state a prima facie ADA retaliation case, a plaintiff must demonstrate engagement in protected activity, including opposing practices the ADA makes unlawful, and that as a result she suffered a "materially adverse" action. *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011).

The only protected activity that Cranmer identifies is her request to take time off from work to get treatment for her kidney condition. Doc. 121 at 40. She claims that her request was in essence a request for an accommodation under the ADA, which would count as protected activity. *Id.* But she is incorrect that her request was tantamount to a request for an accommodation.

In ADA cases, an accommodation means "modifications or adjustments" either to the "job application process" or the "work environment," or such modifications and adjustments "that enable" a disabled employee to "enjoy equal benefits and privileges of employment." 29 C.F.R. § 1630.2(o). Requesting a "modification" or "adjustment" implies that the employee is seeking a change in their employment status quo. *See Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1193 (10th Cir. 2022). And a request for such a modification or adjustment only qualifies as protected activity when it is "direct and specific" such that the employer receives notice that the employee needs "a special accommodation" to continue performing their job. *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1188 (10th Cir. 2016) (internal quotation marks omitted) (citing *Calero-Cerezo v. U.S. Dep't Justice*, 355 F.3d 6, 23 (1st Cir. 2004)); *see also C.R. England, Inc.*, 644 F.3d at 1049. That is important because a request for an accommodation triggers the obligation of an employer and employee to engage in an interactive process that is designed to identify the precise limitation and the reasonable accommodation tied to that limitation. *Dansie*, 42 F.4th at 1193.

Cranmer did not request a "special accommodation." She asked to take paid time off to attend one or more of her medical appointments

11

and the requests were approved. There is no evidence that these requests modified or adjusted Cordell & Cordell's normal approach to paid time off applicable to its non-attorney employees. *See* Doc. 109-26 at 18 (outlining Cordell & Cordell policy). Cranmer has failed to identify any authority within the Tenth Circuit or beyond that has recognized that a request to use paid time off in such circumstances constitutes a request for a special accommodation. And without that, her prima facie case fails. *Herrmann*, 21 F.4th at 679.

### C

In its reply brief, Cordell & Cordell contended for the first time that efforts to replace Cranmer predated November 2021. *Compare* Doc. 128 at 11, *with* Doc. 97 at 8–11. In order to support its new argument, it relied on "Exhibit AL," Doc. 128-1, which purports to be screenshots of internal software showing a job posting for a paralegal dating to October 2021. Cranmer claims that document was not previously disclosed and moves to exclude "Exhibit AL" for purposes of this motion and from trial under Rule 37(c)(1). Doc. 131 at 10–11.

That motion is denied as moot. The argument that efforts to replace Cranmer began prior to November 2021 was only raised in reply. *Compare* Doc. 109, *with* Doc. 128 at 11. Arguments made for the first time in a reply brief are typically not considered, and were not considered here. *United States v. Leffler*, 942 F.3d 1192, 1198 (10th Cir. 2019). Any evidentiary concerns as to the subsequent use of this exhibit can be addressed, if necessary, at a later time.

### III

For the foregoing reasons, Cordell & Cordell's Motion for Summary Judgment, Doc. 99, is GRANTED in part and DENIED in part. Cranmer's Motion for Sanctions, Doc. 131, is DENIED as moot, without prejudice.

It is so ordered.

Date: August 9, 2024                        s/ Toby Crouse
                                            Toby Crouse
                                            United States District Judge